IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANQUICIAS NATIVAS, INC.,
et. al.

    Plaintiffs,

        v.                              CIVIL NO.: 11-1934 (MEL)

CLERIDEL CORPORATION,

    Defendant.

**OPINION AND ORDER**

**I. PROCEDURAL BACKGROUND**

On August 30, 2011, plaintiffs Franquicias Nativas, Inc. and Gilberto Ramírez González ("plaintiffs") filed a complaint in the Puerto Rico Court of First Instance, Carolina, against defendant Cleridel Corporation ("defendant") asserting breach of contract and violation of trademark rights. (Docket No. 1-3, ¶ 15). Plaintiffs alleged that defendant violated their trademark rights by continuing to use plaintiffs' "La Borinqueña B.B.Q." trademark after the cancellation of a franchise agreement between the parties, which had authorized the defendant to use said trademark throughout the duration of the agreement. (Docket No. 1-3, ¶¶ 4, 14). Plaintiffs also sought a temporary order under Article 30 of the Government of Puerto Rico Trademark Act, P.R. Laws Ann. Tit. 10 § 224 ("PR Trademark Act"), requiring defendant to stay, cease or desist from using the "La Borinqueña B.B.Q." trademark (Docket No. 1-5, ¶ 8), which the Superior Judge granted. (Docket No. 1-6). Defendant timely removed the case pursuant to federal question jurisdiction, alleging that the mark is used in interstate commerce and any claim for infringement falls under provision of the U.S. Trademark Act, 15 U.S.C §

1051, *et seq*. (known as the "Lanham Act"). (Docket No. 1). Pending before the court is plaintiffs' motion to remand. (Docket No. 6).

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW ON A MOTION TO REMAND

A defendant may remove a case filed in state court only when the action could have been originally filed in federal court. 28 U.S.C. § 1441; Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). In the absence of complete diversity between the parties, there must be federal question jurisdiction for the federal court to hear the case. Caterpillar Inc., 482 U.S. at 392. District courts have federal question jurisdiction over "all civil actions [that] aris[e] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. In order to establish federal question jurisdiction, a federal question must presented on the face of a plaintiff's complaint. Rosselló-González v. Calderón-Serra, 398 F.3d 1, 10 (D.P.R. 2004).

When a party questions the propriety of a removal petition, the removing party bears the burden of showing that removal is proper. BIW Deceived v. Local Union S6, Indus. Union of Marine & Shipbldg. Workers of Amer., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997). Removal statutes are strictly construed against removal. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941). When plaintiff and defendant clash about jurisdiction, "all doubts should be resolved in favor of remand." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted).

### B. WELL-PLEADED COMPLAINT RULE AND COMPLETE PRE-EMPTION

Whether a federal court has federal question jurisdiction is determined by the well-pleaded complaint rule. According to the rule, in order to obtain federal jurisdiction a plaintiff's claim to relief must rest upon a federal right that is presented on the face of the complaint.

Caterpillar Inc., 482 U.S. at 392. The well-pleaded complaint rule makes the plaintiff the "master of the claim" and allows him or her to "avoid federal jurisdiction by exclusive reliance on state law." Id.

In its notice of removal, defendant alleges that plaintiffs' trademark infringement claim raises a substantial federal question, arguing that the mark is used in interstate commerce and is thus subject to the pertinent provisions of the Lanham Act, not only the PR Trademark Act. (Docket No. 1, ¶¶ 2-3). Plaintiffs seek a remand to state court for lack of subject matter jurisdiction. (Docket No. 6, ¶ 1). They argue that the well-pleaded complaint rule allows them to avoid federal jurisdiction by relying exclusively on state law. (Docket No. 6-1, p. 2).

In addition to seeking relief and damages for breach of contract, the complaint alleges that defendant violated plaintiffs' trademark rights for "La Borinqueña B.B.Q.," a mark registered under the laws of Puerto Rico. The complaint does not specifically state that plaintiffs seek relief under the PR Trademark Act. Instead, it only alleges that defendant intentionally violated plaintiffs' trademark rights without mentioning a specific statutory provision. (Docket No. 1-3, ¶ 15). However, plaintiffs' cause of action is based solely on the PR Trademark Act because the complaint does not mention nor seek relief under federal law and, according to the evidence of record, the mark is only registered in Puerto Rico, not federally.[1] Moreover, plaintiffs' memorandum in support of their motion to remand clarifies that their cause of action is based exclusively on Puerto Rico law; specifically, the PR Trademark Act. (Docket No. 6-1, p. 1-2).[2] Defendant also concedes in the notice of removal that plaintiffs bring their claim of

---

[1] The only evidence presented by the parties as to the registry of the mark in question is a Registration Certificate issued by the Puerto Rico Department of State. (Docket No. 1-3, p.8).

[2] The PR Trademark Act incorporates elements of federal trademark law, former Commonwealth trademark law, and the Model State Trademark Act. Oriental Financial Group, Inc. v. Cooperativa de Ahorro y Credito Oriental, 750 F. Supp. 2d 396 (D.P.R. 2010); see P.R. Laws Ann. 10 §§ 223 et seq. Article 26 of the Act provides for civil liability for infringement of marks registered and used in Puerto Rico. It also specifies the elements to be taken into

trademark infringement only under the PR Trademark Act. (Docket No. 1, ¶ 1). Therefore, defendant's argument that plaintiffs' claims arise under the Lanham Act discounts that plaintiffs, as masters of their complaint, have chosen to base their cause of action exclusively on state law. Within the four corners of the complaint, there is no indication that plaintiffs intended to raise a federal cause of action. The complaint does not mention federal law, nor does it allege that the trademark is used in interstate commerce.

Moreover, defendant's contention that the mark is in fact used in interstate commerce is not sufficient to create federal question jurisdiction. Defendant does not provide any evidence to support its allegation that that the trademark is used in interstate commerce. The notice of removal simply states that "[t]he mark is used in interstate commerce and as such, any claim for infringement of the mark falls under the pertinent provisions [of the] Lanham Act." (Docket No. 1, ¶ 2). In order to "properly remove a trademark case to federal court, a defendant must satisfy the requirements for original jurisdiction under the Lanham Act," as well as demonstrating that the plaintiff sought relief under that Act. Gateway 2000, Inc. v. Cyrix Corp., 942 F. Supp. 985, 993 (D.N.J. 1996). Because the Lanham Act applies only to marks used "in commerce," see 15 U.S.C. § 1127, courts have required a plaintiff to allege use in interstate commerce in order to make out a trademark infringement claim under that Act. See Gateway 2000, 942 F. Supp. at 993; Deats v Joseph Swantak, Inc., 619 F. Supp. 973, 978 (N.D.N.Y. 1985); see also San Juan Star v. Casiano Commc'ns Inc., 85 F. Supp. 2d 89, 91 (D.P.R. 2000) (citing Ditri v. Coldwell Banker Residential Affiliates, 954 F.2d 869, 872 (3d Cir. 1992)) (requiring element of interstate commerce to be plead for false advertising claim under Section 43(a) of Lanham Act). Therefore,

---

account by the court when fixing damages in favor of the plaintiff. P.R. Laws Ann. Tit. 10 § 223.  Thus, the PR Trademark Act provides for plaintiffs' cause of action and the damages sought in their complaint.

plaintiffs' failure to mention interstate commerce in their complaint could preclude original jurisdiction under the Lanham Act. Further, because plaintiffs seek relief only under Puerto Rico law, the well-pleaded complaint rule dictates that removal to federal court would be appropriate.

However, there are two exceptions to the well-pleaded complaint rule. First, Congress can include in a statute an express preemption provision not only giving federal courts jurisdiction, but also providing for removal even when purely state law claims are asserted in the complaint. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-8 (2003). Congress included such a provision in, for example, the Price-Anderson Act, which dealt with tort claims arising from nuclear accidents. Id. at 6. No similar provision appears in the Lanham Act; therefore, there is no explicit expression from Congress authorizing removal.

Another exception to the well-pleaded complaint rule exists when the claim is completely preempted by federal law. Id. at 8. Under the complete preemption doctrine, a state law claim is preempted if "Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be recharacterized as a federal claim." Fayard v. Northeast Vehicle Services, LLC, 533 F.3d 42, 45 (1st Cir. 2008). Therefore, the federal law in question creates a federal cause of action that substitutes the state cause of action. Schmelling v. NORDAM, 97 F.3d 1336, 1342 (10th Cir. 1996); Lehmann v. Brown, 230 F.3d 916, 919-20 (7th Cir. 2000). Complete preemption allows the defendant to remove the case regardless of the complaint's façade and the plaintiff's attempt to avoid federal jurisdiction. Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 475 (1998) (citations omitted).[3]

---

[3] This is distinct from ordinary preemption, which arises as a defense to a state law claim and does not appear on the face of a plaintiff's complaint, and thus cannot be the basis for removal. Metropolitan Life Ins. Co., 481 U.S. at 63; Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 276 n.34 (2004). Conflict or ordinary preemption occurs when a state claim conflicts with a federal statute in such a way that it would be impossible to comply with both state and federal law, or if state law is an obstacle to the accomplishment of the purposes and objectives of the federal law. Metropolitan Life Ins. Co., 481 U.S. at 63; Fitzgerald v. Harris, 549 F.3d 46, 52-53 (1st Cir. 2008).

The Supreme Court has held that a federal regulatory scheme has completely preempted state law in only a handful of situations. For instance, federal law completely preempts state law in claims for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968), claims for benefits under the Employee Retirement Income Security Act, see Metropolitan Life Inc. Co., 481 U.S. at 59, and usury claims against federally chartered banks pursuant to the National Bank Act, see Beneficial Nat'l Bank, 539 U.S. at 10-11. In finding that these regulations completely preempted state law, the Supreme Court evaluated whether "the federal statutes at issue provided the exclusive cause of action for the claim asserted" while "also set[ting] forth procedures and remedies governing that cause of action." Beneficial Nat'l Bank, 539 U.S. at 8. The First Circuit, in its analysis of complete preemption, has concluded that "[e]xclusive federal regulation alone might preempt state claims; but it is the further presence of a counterpart federal cause of action that allows the state claim to be transformed into a federal one." Fayard, 533 F.3d at 46.

Because plaintiffs' well-pleaded complaint seeks relief only under the PR Trademark Act, their complaint raises a federal question only if their Puerto Rico law claim is completely preempted by federal law, transforming it into a federal cause of action. If it does not, then there is no federal question jurisdiction over plaintiffs' complaint, and remand must follow. The remaining question, therefore, is whether the Lanham Act, which defendant argues governs plaintiffs' claims, completely preempts the PR Trademark Act.

C. LANHAM ACT

Congress enacted the Lanham Act in 1946 to provide uniform protection for trademarks used in interstate and foreign commerce. Park 'N Fly v. Dollar Park 'N Fly, Inc., 469 U.S. 189,

193 (1985). The Act created a cause of action for the misleading use of marks and protects merchants engaged in interstate commerce from unfair competition. 15 U.S.C. § 1127. While only federally registered owners can sue against infringement under Section 32 of the Act, owners of marks that are not federally registered can pursue an infringement claim as an unfair competition action under Section 43(a), which is commonly used to prevent infringement of unregistered marks. See 15 U.S.C. § 1114; 15 U.S.C. § 1125(a); PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 79 (1st Cir. 1996).

The First Circuit has not expressly addressed whether, in the context of removal, the Lanham Act completely preempts state trademark statutes. However, it has concluded, in a similar context, that the Lanham Act does not completely preempt state common law service mark protection. See Colonial Penn Group, Inc. v. Colonial Deposit Co., 834 F.2d 229 (1st Cir. 1987). In Colonial Penn, the plaintiff had brought an action in Rhode Island state court seeking state common law trade name protection. Id. at 231. The defendant later filed a declaratory judgment action in federal court, asserting jurisdiction under Section 39 of the Lanham Act, and subsequently sought removal of the state claim. The federal district court remanded the state action, holding that there was no federal question jurisdiction. It also dismissed the declaratory judgment action *sua sponte* for lack of subject-matter jurisdiction. Because the defendant appealed only the dismissal of the declaratory judgment action, the remand of the state court action was not before the court. Id. at 231-32. The court, however, characterized the declaratory judgment action under the Lanham Act as a preemptive defense to the state court common law trade name action. Accordingly, it was the nature of the impending state court action, not the declaratory judgment defense, which determined whether there was federal-question jurisdiction in the district court. Id. at 233 (quoting Public Service Comm'n v. Wycoff Co., 344 U.S. 237,

248 (1952)) ("If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim."). In affirming the district court's decision, the First Circuit found it undisputed that the state court complaint was based entirely on state law and did not plead a federal cause of action. Id. at 234. The district court would thus only have had jurisdiction if the plaintiff's common law trademark action were completely preempted by the Lanham Act. The First Circuit summarily rejected this idea, stating that "[i]t cannot be argued that the Lanham Act has completely preempted state common law service mark protection," and distinguishing the Lanham Act from federal laws that do have a preemptive effect, such as § 301 of the Labor Management Relations Act. Id. at 234 n.3 (citing Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366 (1st Cir. 1980), abrogated on other grounds by, Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 776 (1992)).

Colonial Penn relies on an earlier First Circuit case that also noted the Lanham Act's lack of preemptive effect. See Keebler Co., 624 F.2d at 366. In that case, the plaintiff alleged that the defendant had infringed its federally registered trademark rights. The plaintiff, however, had sought jurisdiction based on diversity of citizenship and did not specifically claim relief under the Lanham Act. As a result, the court first had to consider the threshold issue of what law applied to the action by determining the source of the right upon which plaintiff's cause of action was based. Id. at 371. The court found that Section 32 of the Lanham Act was applicable because it protects a registrant's proprietary interest in their mark. In addition, it found that the plaintiff also had a common law property right in the disputed trademark. The court reasoned that registration does not create the underlying right in a trademark; rather, that right is a common law property right. Id. at 372. A liberal construction of the plaintiff's complaint therefore

8

revealed a cause of action under common law unfair competition. In determining that both areas of law applied to the action, the court explained that:

> The Lanham Act does not preempt the states' ability to recognize and protect trademark rights. The purpose of the Act was to protect the public from confusing and deceptive trademarks and to provide security against misappropriation for trademark owners who have invested resources in presenting their products to the public and exploiting whatever goodwill the merits of their products warrant. The Supremacy Clause bars only state statutes or doctrine that would permit the sort of confusing or deceptive practices the draftsmen of the Lanham Act sought to prevent.

Id. at 372 n.3 (citing Marianiello v. Shell Oil Co., 511 F.2d 853, 858 (7th Cir. 1980)).

The First Circuit relied on Keebler Co. again in a more recent case that addressed whether a state law prescribing attorneys' fees was conflict preempted by the Lanham Act. Attrezzi, LLC v. Maytag Corp., 436 F.3d 32 (1st Cir. 2006). In Attrezzi, the applicable state unfair competition law provided for attorneys' fees as a matter of course, while the Lanham Act only makes them available in exceptional cases. Id. at 40-41. The defendant claimed that the Lanham Act's attorneys' fees provision preempted the state rule under two theories of implied preemption: field preemption and conflict preemption.[4] In rejecting the field preemption argument, the court noted that it is "settled that the Lanham Act does not in general preclude state unfair competition statutes from operating."[5] Id. at 41 (citing Keebler Co., 624 F.2d at 372 n.3). It then turned to the defendant's conflict preemption argument, stating that "it is accepted that Congress did not prohibit state unfair competition statutes that might have substantive terms

---

[4] Field preemption occurs when Congress creates a scheme of federal regulation so pervasive that it evidences the legislature's intent to occupy the field and preclude states from supplementing federal law. See, e.g., Barnett Bank Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996).

[5] The First Circuit has observed that some courts and academics have expressed concern over whether the doctrines of complete preemption and field preemption are coextensive. Despite these concerns, the court appears to recognize the two doctrines as distinct concepts, noting that "ordinary 'defensive' preemption may also be complete, as where Congress occupies the field." Fayard, 533 F.3d at 45-46. The Second Circuit has reached a similar conclusion, stating that while "[i]t is true that the defense of field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force[,] [t]he two types of preemption are [ ] better considered distinct." Sullivan v. American Airlines, Inc., 424 F.3d 267, 273 n.2 (2d Cir. 2005).

somewhat more favorable to plaintiffs than the Lanham Act." Id. at 42 (citing Keebler Co., 624 F.2d at 372 n.3). The court also noted that, unlike laws such as the Clean Water Act, 33 U.S.C. §§ 1250 *et seq*., or the standards for automobile safety found in the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. §§ 1381 *et seq*., the Lanham Act is not a full-scale regulatory regime such that "state deviations, including attempts to provide greater protection for putative plaintiffs," would conflict with "a carefully constructed regulatory compromise." Id. Therefore, the court held, "[i]f state substantive regimes are (ordinarily) not preempted by the Lanham Act, neither is [the state]'s tinkering with the remedial components." Id. Given the First Circuit's clear expressions that the Lanham Act does not conflict or field preempt state regulation of trademark law, it is evident that it does not have the more powerful effect needed to completely supplant, and thus completely preempt, state law.

Attrezzi is also in line with the Third Circuit's holding in La Chemise Lacoste v. Alligator Co., Inc., 506 F.2d 339 (3rd Cir. 1974). In that case, the Third Circuit rejected the argument that the Lanham Act preempted the field of trademark regulation, holding that "the Lanham Act generally does not preempt state regulation of trademarks, statutory or common law." Id. at 346. It also took a restrictive view of the removal statute, stating that:

> Ample experience indicates that, where a state trademark or infringement action is sought to be removed to federal court on the theory that the action could have been predicated on the Lanham Act, federal courts have been unwilling to find a federal question by implication and have remanded to state courts. Fischer v. Holiday Inn of Rhinelander, Inc., 375 F. Supp. 1351, 1354 (W.D.Wis.1973); Cue Publ. Co. v. Colgate-Palmolive Co., 233 F.Supp. 443 (S.D.N.Y.1964); Fluidless Non-Tact Lenses, Inc. v. Klear Vision Contact Lens Specialists, Inc., 158 F. Supp. 145, 146 (S.D.N.Y.1958); M&D Simon Co. v. R. H. Macy & Co., 152 F.Supp. 212, 216 (S.D.N.Y.1957).

Id. at 346 n.9. Therefore, the court concluded that if a plaintiff's claim can give rise to both a federal and state cause of action, the plaintiff can choose to bring solely the claim in state court.

Id. at 346. This reasoning was adopted by the Second Circuit when evaluating a trademark infringement claim that was not explicitly pleaded as one arising under federal law. See Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 964 (2nd Cir. 1981) (citations omitted). The court noted that a plaintiff who could "support a claim founded upon either federal or state law is free to confine his claim to one based on state law and proceed in state court." Id. Several district courts have also followed this line of reasoning. See Gateway 2000, Inc., 942 F. Supp. at 993 (citing Colonial Penn, 834 F.2d at 237; La Chemise Lacoste, 506 F.2d at 345; Gardner v. Clark Oil & Refining Corp., 383 F. Supp. 151 (E.D. Wis. 1974); Fischer v. Holiday Inn of Rhinelander, Inc., 375 F. Supp. 1351, 1353 (W.D. Wis. 1973)) (holding that action seeking relief solely under state law should not be removed to federal court, even where the was mark federally registered, because "[t]he Lanham Act does not have a preemptive effect over state regulation of trademark law"). Therefore, courts in other jurisdictions analyzing whether the Lanham Act preempts state law have routinely found that it does not.

Although the First Circuit has not specifically addressed whether the Lanham Act completely preempts state trademark law, it has repeatedly recognized that the Act does not reflect congressional intent to preclude state regulation of trademark law. Furthermore, it has consistently allowed parallel state and federal trademark claims to proceed without finding that the federal cause of action displaces the state law one. See Colonial Penn, 834 F.2d at 234; Keebler Co., 624 F.2d at 372. The Lanham Act thus does not have the preemptive force required to completely preempt plaintiffs' PR Trademark Act claim and convert it into a federal cause of action. Therefore, because plaintiffs' complaint relies exclusively on Puerto Rico law, and that law is not preempted by federal law, the complaint does not raise a federal question.

Accordingly, as there is no diversity of citizenship between the parties, there is no federal jurisdiction over the action and remand is appropriate. See 28 U.S.C. § 1441.

### III. CONCLUSION

Based on the foregoing, plaintiff's motion to remand (Docket No. 6) is GRANTED and this action is hereby REMANDED to the Puerto Rico Court of First Instance, Carolina Part.

In San Juan, Puerto Rico, this 3rd day of May, 2012.

s/Marcos E. López<br>
U.S. Magistrate Judge